537 So.2d 1252 (1989)
STATE of Louisiana
v.
Jimmie D. BROWN.
No. 88-KA-0166.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1989.
Harry F. Connick, Dist. Atty., R. Jeffrey Bridger, Asst. Dist. Atty., New Orleans, for appellee.
Kendall P. Green, New Orleans, for defendant.
Before GARRISON, BARRY and WILLIAMS, JJ.
WILLIAMS, Judge.
Defendant, Jimmie D. Brown, was convicted of possession of stolen property valued at more than five-hundred dollars, a violation of LSA-R.S. 14:69. Defendant subsequently pled guilty to a multiple bill and was sentenced to ten years at hard labor with credit for time served.
Defendant appeals the jury conviction, assigning two errors:
(1) the trial court erred in forcing defendant to trial in prison garb over defense objection;
(2) the State failed to prove beyond a reasonable doubt both that defendant knew the property was stolen and the actual value of the property.
The issues facing this court are: 1) a) Whether the trial court erred by compelling defendant to be tried in identifiable prison attire over his objection, thereby impairing defendant's right to a presumption of innocence; *1253 b) If so, whether the error was harmless so as not to be a substantial violation of defendant's constitutional rights under the circumstances; 2) Whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
The facts of this case are as follows. On June 26, 1987, the wife of Jonathan Benesch used his 1985 Camaro Z-28 and parked it near her place of employment on Canal Street. When she returned to the parking space at approximately 2:00 p.m., the car was missing. The police were notified, and a report was filed.
At approximately 1:30 a.m. on July 7, 1987, Officers Gerald Porteous and Shiela Fortunet were patrolling their area in the 5th District in a marked police unit. There they observed defendant attempting to start a gold Camaro from the left side of the steering column in a manner indicating that the steering column had been defeated and the driver was without benefit of a key. The officers watched as defendant started the car and accelerated at a high rate of speed. The officers followed defendant and turned on their lights and siren when defendant ran a stop sign. Defendant fled, ran multiple stop signs, then stopped in a parking lot where he parked inconspicuously beside a large cargo van. The officers apprehended defendant and charged him with reckless driving.
Inside the gold Camaro, the officers observed a cracked steering column, a screwdriver on the passenger floorboard, missing radio and speakers, and a temporary license plate in the back window. The officers ran a check on the vehicle, learned that it was stolen, and placed defendant under arrest for possession of stolen property.
Defendant told the officers he was just having fun with them. He requested to speak with the victim and offer to pay for damages to the car and for missing property.
Mr. Benesch was notified that the car had been found. At that time, he went to the area near Marigny Street and Claiborne Avenue and recovered his automobile.
At trial, defendant testified that he was employed as a maintenance manager at the Paris Theater and also operated an automobile repair shop behind the theater. He testified that his co-worker at the shop, Raul Martinez, had accepted the Camaro from its owner for repairs to the air conditioning and steering column. Mr. Martinez testified that no key was left with the car when it was tendered for repair. Further, Mr. Martinez testified that the person who left the car was not required to give proof of ownership and that defendant did not care whether the automobiles were stolen or not. Defendant testified that on the Tuesday morning in question, after a midnight show at the theater, he offered to give a female co-worker a ride home for her safety. Defendant testified that both his car and motorcycle were inoperable, so he opted to use the gold Camaro that was in his shop. It was then that Officers Porteous and Fortunet observed defendant starting the car. Defendant testified that he started the car with his finger but that he did have a key on his key ring. However, defendant did not produce this key at trial, and Mr. Martinez testified that no key was left with the car when it was tendered for repair.
ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, defendant argues that the trial court erred in forcing him to trial in prison clothes over defense objection. The record shows that defendant failed to object to his clothing during voir dire examination. Prior to opening statements, however, defense counsel moved for leave on defendant's behalf to change into his street clothes. The trial court denied defendant's motion but noted that the jury had been admonished, out of an abundance of caution, to disregard defendant's prison garb. Defendant was tried in brown khaki prison attire.
We agree that the trial court erred, but hold that under the circumstances of *1254 this case, the error was harmless so as not to be a substantial violation of defendant's constitutional rights and therefore, not reversible.
In recognition of defendant's right to a presumption of innocence, the State cannot compel a defendant to stand trial before a jury while dressed in identifiable prison clothes. Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Past Louisiana courts have upheld convictions on the basis of defendant's failure to establish deprivation of his right to a presumption of innocence by clear and convincing evidence, focusing on the fact that defendant's attire was not identifiable prison garb. State v. Yates, 350 So.2d 1169 (La.1977); State v. Kinchen, 290 So.2d 860 (La.1974); State v. Tennant, 262 La. 941, 265 So.2d 230 (1972).
In the present case, the only showing we have that defendant's prison clothing was identifiable as such is the testimony of two witnesses who identified the defendant during trial as the man wearing "O.P.P." browns. There is no description of the clothing other than that it was, at least in part, brown khaki. It was error for the trial court to compel defendant to wear prison attire at the trial where defendant objected and requested opportunity to change into civilian clothing. State v. Brown, 368 So.2d 961 (La.1979) (on rehearing); State v. Leggett, 363 So.2d 434 (La. 1978).
Defendant relies primarily on State v. Brown, supra, for the proposition that it is reversible error for a trial court to compel a defendant to stand trial in identifiable prison attire since it impairs his presumption of innocence. However, we hold under the circumstances of this case that the error was harmless and does not require automatic reversal. See Estelle v. Williams, supra; LSA-C.Cr.P. art. 921. In State v. Brown, defendant was convicted after his pre-trial objection in chambers to being tried in orange-yellow prison garb was refused. The Supreme Court emphasized that defendant in that case relied primarily on his presumption of innocence for his defense. Noting that the jury's vote was not unanimous, but 10-2, the court held that the accused's compelled attendance in distinctive prison garb impaired the presumption of innocence upon which defendant primarily relied and reversed the conviction under those circumstances.
Unlike State v. Brown, defendant in this case did not raise his objection in judge's chambers before appearing to the jury during trial. On the contrary, the record shows defendant went for the entire duration of voir dire examination without ever raising an objection to being in the jury's presence clothed in prison attire. Defendant's objection to being tried in civilian attire was not raised so early as to clearly establish that it was not a mere dilatory tactic. See Joseph, Criminal Law and Procedure, The Work of the Louisiana Appellate Courts for the 1978-1979 Term, 40 La.L.Rev. 635 at 649 (1980). Compare State v. Yates, supra [court ultimately affirmed conviction on basis of defendant's attire not being identifiable prison garb, but noted the fact that defendant failed to raise objection during voir dire when defendant was so attired]; State v. Rattler, 503 So.2d 168 (La.App. 4th Cir.1987) [this court noted in dicta that defendant's objection to being tried in prison attire was not timely since it was not raised until after trial had begun]. Moreover, unlike State v. Brown, defendant in this case did not rely primarily on his presumption of innocence. In presentation of his case, defendant presented witnesses in addition to taking the stand himself. Additionally, defendant's attire was brown, not orange-yellow as in State v. Brown. Although two witnesses identified defendant as the man in "O.P.P." browns, the record does not support a finding that defendant's clothing was so distinctive and identifiable as to serve as a constant reminder to the jurors which impaired defendant's presumption of innocence. See Estelle v. Williams, supra; State v. Brown, supra.
Under the circumstances of this case, we find that the error of the trial court was harmless so as not to be a substantial violation of defendant's constitutional right to a presumption of innocence. Accordingly, *1255 defendant's first assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, defendant argues that the State failed to prove beyond a reasonable doubt both that defendant knew the automobile was stolen and the actual value of the automobile.
In reviewing sufficiency of evidence to support a conviction, we must determine whether, viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mercadel, 503 So.2d 608 (La.App. 4th Cir.1987). Where circumstantial evidence is considered, LSA-R.S. 15:438 provides that every reasonable hypothesis of innocence must be excluded. However, 15:438 is not a separate test from Jackson establishing a stricter standard of review. State v. Porretto, 468 So.2d 1142 (La.1985). It is merely an evidentiary guideline for the jury and "facilitates appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt." State v. Wright, 445 So.2d 1198, 1201 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Porretto, supra; State v. Wright, supra.
The defendant was convicted of illegally possessing an automobile valued at approximately $13,000.00. The four essential elements of this offense are: (1) the item was stolen; (2) the item was of value; (3) the defendant knew or should have known the property was stolen; and (4) the defendant intentionally procured, received, or concealed the property. State v. Mercadel, supra; State v. Walker, 350 So.2d 176 (La.1977). Mere possession of stolen property does not create a presumption that the possessor knew or had reason to know the property was stolen. State v. Mercadel, supra; State v. Slaughter, 451 So.2d 59 (La.App. 4th Cir.1984).
First, we find that the evidence could have led a reasonable jury to find that defendant knew or should have known the property was stolen. The defendant started the car with a defeated steering column and started it not with benefit of a key but with his finger. Defendant fled police when they pursued him. When caught, defendant requested an opportunity to speak with the owner of the car in order to reimburse for damages and missing items. Defendant headed a car repair operation where the Camaro had been left without a key in the days preceding the arrest, although defendant claimed to have a key. And defendant knew the car had been delivered with a broken steering column. Viewing all the evidence in the light most favorable to the prosecution, we find that any reasonable trier of fact could have found beyond a reasonable doubt that defendant knew or should have known the car was stolen.
Next, LSA-R.S. 14:69 provides increased penalties for possessing stolen things at different values. When the value of the thing is five hundred dollars or more, the offender shall be imprisoned with or without hard labor for not more than ten years, or fined not more than three thousand dollars, or both. LSA-R.S. 14:69. We find that the evidence supports defendant's conviction of possession of a stolen thing valued at more than five hundred dollars. Defendant relies on State v. Peoples, 383 So.2d 1006 (La.1980), to support the proposition that the State's evidence of value was insufficient to warrant a conviction. Defendant's reliance on this case is misplaced. In Peoples, the original total cost of the property stolen only amounted to $561.80, and the property was between two and seven years old at the time of the offense. In addition, the property was depreciable, and no evidence was submitted by the State regarding its value or condition at the time of the offense. Moreover, defense offered testimony that the property could have been worth $220.00 to $400.00 when stolen. In the present case, the State offered as evidence of value the bill of sale for the automobile, proving the car was purchased for $13,345.00 "late last *1256 year." The owner further testified that the automobile was in virtually the same condition when it was stolen as when he purchased it. We note that the defense offered no evidence concerning the value of the automobile. Viewing the evidence in the light most favorable to the prosecution, we find that a reasonable trier of fact could have found the value of the automobile was approximately $13,000.00 and exceeded $500.00.
Defendant argues in brief that the trial judge improperly commented on the evidence in violation of LSA-C.Cr.P. arts. 772 and 806, which state in pertinent part that in the presence of the jury, the trial judge "... shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted." The transcript of the trial shows that the prosecution introduced into evidence State's Exhibit No. 1, the bill of sale for the vehicle. Thereafter, in sustaining defense objection to the admissibility of State's Exhibit No. 2, the appraisal of repair damage to the car, and upon hearing that the estimated value of the car had been given, the trial judge stated:
"Well, that will suffice. Now, if you want to proffer that [the repair estimate] to the court, etc., I'll let you ..., but I don't think it's relevant...."
Defendant's argument is without merit. Defendant raised no objection at the time of trial to give the trial judge opportunity to correct any possible error. Therefore, defendant's objection is waived. LSA-C. Cr.P. art. 841.
Additionally, we find that no inference can be drawn from the judge's comment that the court expressed or implied an opinion as to the guilt or innocence of the accused. See State v. Lonigan, 269 So.2d 816, 818 n. 2 (La.1972). In order to constitute reversible error, the judge's comment must be shown to have influenced the jury and contributed to the verdict. State v. Hamilton, 481 So.2d 135 (La.App. 2d Cir. 1985). Defendant here has made no showing of prejudice created in the minds of the jury. State v. Wright, supra. We do not consider the comments of the trial judge amounted to impermissible comment on the evidence which would warrant reversal. Accordingly, defendant's second assignment of error is without merit.
For the foregoing reasons, defendant's conviction is affirmed.
AFFIRMED.
BARRY, J., dissents with reasons.
BARRY, Judge, dissenting with reasons.
I agree with the explicit case law which sets forth that in recognition of a defendant's right to a presumption of innocence, the State cannot compel a defendant to stand trial by a jury while dressed in identifiable prison clothes. Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).
The key issues here: (1) are the clothes identifiable; (2) did the defendant timely request an opportunity to remove his prison clothes?
Prior to the start of trial, i.e., prior to opening statements and calling the first witness, defense counsel advised the court that the defendant had on regular clothes before entering the courtroom, but was ordered by a deputy to change into prison garb. Counsel then moved for a slight delay in order for the defendant to put back on his regular clothes. The motion was denied, and the court noted that during voir dire the jury had been admonished to disregard the defendant's "prison garb". The judge said "I was not going to disrupt the trial at that time merely to go over and undress again, which would have delayed us even further." The court then took a recess.
During trial the defendant wore a brown khaki prison-issued uniform, commonly referred to as "O.P.P. fatigues". Two trial witnesses identified the defendant as the man "in O.P.P. browns" and "brown O.P.P. clothes." It is common knowledge in our community that "O.P.P.", which is painted on prison-issued clothes, means the wearer is a Orleans Parish Prison inmate.
*1257 The various cases cited by the majority involve clothing which was not identifiable as prison clothing.
I cannot conceive of how this defendant received a fair trial after sitting in front of the jury dressed in prison clothes. The clothes were identifiable and he timely moved before trial to change clothes.
A fundamental right was violated. Despite the sufficiency of evidence, this conviction should be reversed.