IjTOBIAS, Judge.
On 20 September 1999, the defendant, Alan E. Brown (“Brown:”) was charged by bill of information with two counts of attempted simple burglary, violations of La. R.S. 14:27(62), and one count of simple •burglary, a violation of La. R.S. 14:62. He was arraigned on 1 October 1999, and pled not guilty. The State proceeded to trial on the simple burglary count on 10 November 1999; a six-member jury found him guilty of attempted simple burglary. On 15 December 1999, Brown was sentenced to three years at hard labor. He filed a motion to reconsider sentence which was denied. He then filed a motion for appeal. The state filed a multiple bill. Brown pled guilty to being a second offender on 4 February 2000.[1] The trial court vacated the original sentence, and re-sentenced Brown to five years at hard labor.

FACTS:

The victim, Justin Smith (“Smith”), a student at Delgado Community College, was walking back to his truck when his roommate, Gary Cressend (“Cressend”), also a student, called to him to say someone was in his truck. Smith yelled at the defendant and asked what he had been doing in the truck, to which the ^defendant responded, “I wasn’t doing anything”, as he walked to his car, a 1983 black Jaguar, and drove away. Smith noted the number on the license plate; a subsequent check of the license plate number revealed that the car was registered to Brown. A speaker and a CD player had been removed and the console of Smith’s truck was broken. Cressend and Smith identified Brown in separate photographic lineups.

ERRORS PATENT:

A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1

Brown urges that the trial court committed reversible error by refusing to grant a mistrial when he appeared before the jury handcuffed, shackled and wearing a prison identification wristband.
The record reveals that after jury selection and before opening statements, Brown appeared in the courtroom in the presence of the jury wearing handcuffs, leg shackles, and a prison identification wristband. His counsel moved for mistrial. The trial judge found that Brown had not been wearing shackles or that the jury had not seen them if he was. He said the jury would not have known what the wristband meant, and that the jury would only have assumed the handcuffs were a security measure and not evidence of Brown’s guilt.
Article 770 of the Louisiana Code of Criminal Procedure mandates the granting of a mistrial if a judge, district attorney, or a court official refers within the hearing of the jury to: (1) race, religion, color, or national origin of the accused; (2) another *424 crime committed or alleged to have been committed by the accused; (3) the failure of the accused to testify; or (4) the refusal of the judge to direct a verdict. The incident complained of in this case does not fall within the | «purview of Article 770.
Article 775 of the Louisiana Code of Criminal Procedure provides that a mistrial shall be ordered upon the motion of the defendant “when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.”
In State v. Payne, 482 So.2d 178 (La.App. 4 Cir.1986), this court noted that a mistrial is a drastic remedy warranted only when an error at trial results in substantial prejudice to a defendant which effectively deprives him of a fair trial. The Louisiana Supreme Court has held that the determination of whether to grant a mistrial under Article 775 is within the trial court’s sound discretion, and its denial of a motion for mistrial should not be disturbed on appeal absent an abuse of discretion. State v. Smith, 433 So.2d 688 (La.1983); State v. Alexander, 351 So.2d 505 (La.1977). The standard to judge whether a mistrial should have been granted is whether the defendant “suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial.” State v. Smith, 433 So.2d at 696; State v. Cushenberry, 407 So.2d 700 (La.1981).
Ordinarily, when appearing for trial a defendant should not be shackled, handcuffed, or clothed in any manner destructive of the presumption of his or her innocence and of the dignity and impartiality of judicial proceedings. State v. Wilkerson, 403 So.2d 652 (La.1981); State v. Smith, 504 So.2d 1070 (La.App. 1 Cir.1987).
In State v. Spellman, 562 So.2d 455 (La.1990), the defendant was compelled to appear at trial in prison clothes over his express objection. The court found the situation to be especially egregious because the defendant was wearing distinctive clothing from Orleans Parish Prison, but was on trial in St. Bernard UParish. Furthermore, several members of the jury venire acknowledged that the defendant’s attire bothered them. Under those facts, the court concluded that “[ujnder the totality of the circumstances in this case, no jury could have been expected to remain impartial and render fair judgment.” Id. at 457.
In State v. Wilkerson, supra, the jury was leaving the courtroom at the end of the first day of trial. Before they left, a sheriff handcuffed the accused and his co-accused. A majority of the jury passed within four feet of the accused. The accused argued that the jury must have seen him handcuffed. The Louisiana Supreme Court affirmed the denial of his motion for a mistrial. The Court stated that, if the handcuffing was objected to at the time of trial, the record must show an abuse of the trial court’s discretion before the error would be reversible. Id., 403 So.2d at 659. The Court also analyzed the case in terms of the total circumstances and stated:
[They] were not handcuffed during trial. They were handcuffed solely for the purposes of transport to and from the courtroom. Under the circumstances, the possibility that on one occasion several jurors may have seen the defendant in handcuffs does not appear to have so prejudiced the defendant as to warrant relief on appeal.

Id.

In State v. Brown, 594 So.2d 372 (La.App. 1 Cir. 1991), trial was recessed after a Saturday of testimony. At the beginning of trial on Monday, defense counsel moved *425 for a mistrial based on the jurors having allegedly viewed the defendant in prison garb and handcuffed while being escorted by a deputy sheriff on the preceding Saturday after the trial court recessed the trial. When questioned by the trial court as to which jurors had allegedly viewed the defendant, defense counsel stated that the defendant could clearly identify only one of the three jurors involved, and that he could only identify the other two as Caucasian women. The |ssheriffs deputy testified that late during the day on Saturday, he escorted the defendant from the courthouse to the jail facility across the street from the courthouse. When he rode the elevator with the defendant down to the lobby, the defendant was handcuffed and dressed in prison garb. Immediately upon stepping out of the elevator into the lobby, he noticed some people in the lobby. He did not look toward the people and hence could not identify them. The court decided not to question the jurors because to do so would “heighten the incident.” The Court of Appeal found that the trial court had not abused its discretion in denying the defendant’s motion for mistrial:
The instant record does not even substantiate the occurrence of the alleged encounter between defendant and one or more jurors. Even assuming arguendo that the alleged encounter occurred, the scenario envisioned by defendant’s allegation of one or perhaps as many as three jurors seeing defendant dressed in prison clothes and handcuffed (while defendant was being escorted by a deputy from the courthouse to jail during a recess of the trial) would not have so prejudiced defendant as to warrant relief on appeal.

Id.

In State v. Jackson, 584 So.2d 266 (La.App. 1 Cir.1991), on the morning of the last day of trial, the defendant was seen in chains, shackles, and prison clothing by several jurors. Prior to the continuation of the trial, defense counsel moved for mistrial. The defendant testified at a hearing on the motion. He stated that as he was taken into the courthouse, he saw several jurors standing in the lobby. The defendant could name three of the four jurors he saw, but he could not name the fourth. The three known jurors were individually questioned by the trial court as to whether or not they had seen the defendant in prison garb and its effect, if any, it would have on his or her deliberations in the case. Each juror questioned testified that the sight of the defendant dressed in prison clothing would not have an effect |fion his or her deliberations. Additionally, the trial court advised the jurors, after they answered in the negative, that seeing the defendant in prison clothing was not relevant to the case. The trial judge also asked the jurors not to discuss the incident with any of the other jurors. The trial court in denying the motion, stated:
Okay, while this occurrence was unfortunate, the court has taken the only precaution it knows how to take. The jurors have stated that that would not effect [sic] their decision one way or the other; therefore, the motion is denied.

Id.

The Court of Appeal found that the trial court had not abused its discretion in refusing to grant the mistrial.
In the case at bar, we note defense counsel did not object to the prison attire until after voir dire, and after the jury had seen the defendant. When counsel did object and move for mistrial, the trial court noted that the defendant was not in shackles, or that if he was, the jury could not see his feet. It is not apparent from the record if the shackles (if there were any) or the handcuffs were removed prior to the start of trial. However, it does not *426 appear that the trial judge abused his discretion in denying the motion, or that the defendant was substantially prejudiced, given the overwhelming evidence of guilt in the case. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 2

The defendant argues the multiple offender adjudication must be vacated because the exhibits are missing. The State concedes this point and the record before us is devoid of the exhibits.
This assignment has merit and the defendant’s adjudication and sentence under the multiple offender statute must be vacated. La. Const, art. I, § 19 (1974); State v. Ford, 338 So.2d 107 (La.1976); State v. McGhee, 96-1656 (La.App. 4 Cir. 3/24/99), 739 So.2d 222. A hearing on a multiple offender bill is a mere inquiry into a defendant’s prior criminal convictions as a part of the sentencing process. Inadequacies of documentation at the hearing require a negative determination by the court of “guilt” under the Habitual Offender Law, La. R.S. 15:529.1. The determination is not conclusive and the defendant is not protected by principles of double jeopardy from being “tried” again on the question of the prior felony convictions. State v. Hill, 340 So,2d 309, 311-12 (La.1976); State v. Johnson, 432 So.2d 815, 817 (La.1983). Res judicata is also inapplicable. Johnson, supra. Accordingly, we are required to remand for further proceedings pursuant to La. R.S. 15:529.1.
Accordingly, we affirm the conviction of attempted simple burglary, but vacate the multiple offender conviction and sentence. We re-impose the original sentence of three years at hard labor. And we remand for further proceedings consistent with this opinion and the law.
AFFIRMED IN PART, REVERSED IN PART; REMANDED.

. He also pled guilty to the other two counts of attempted simple burglary that day.